## Folgate v. Folgate

*Madeline H. Lamb,* for plaintiff.
*John G. Shea,* for defendant.

ENDY, *J.*, March 6, 1987 — The matter before the court is defendant's petition for judgment of non pros against plaintiff for failure to proceed in a divorce case filed by plaintiff on September 11, 1985,

on grounds of indignities,[1] with additional counts for equitable distribution, alimony pendente lite, alimony, counsel fees and costs. Plaintiff propounded extensive interrogatories, answers to which were filed by defendant on April 11, 1986. On May 10, 1986, the parties entered into a written agreement which provided, inter alia, for sale of certain entirety real estate, an advance from the proceeds in the amount of $10,000 to plaintiff/wife, the balance of the proceeds to be deposited in an escrow account in the name of both parties, an agreement to attempt resolution of the divorce claims, and agreement ". . . to move this matter to a special master if they have failed within 60 days through negotiations, to resolve all outstanding issues."

On motion of defendant, Joseph J. Kenna, Esq. was appointed special master on September 8, 1986. By stipulation of the parties, defendant amended his answer to include a counter claim for divorce[2] and a count for equitable distribution, filed October 9, 1986, and the special master scheduled a hearing for December 8, 1986.

On November 24, 1986, plaintiff advised the special master, "Wife, through her counsel, has informed the special master that she is not going to proceed on the grounds of indignities nor is she going to sign a 201(c) affidavit in order to allow husband's no-fault divorce to proceed." Plaintiff's letter to the special master goes on to challenge the authority of the special master to proceed with the hearing, in the absence of testimony from wife re: indignities and absent her 201(c) affidavit.

Obviously, the special master could have held the hearing, and in the absence of testimony from plain-

---

1. 23 P.S. §201(a)(6).
2. 23 P.S. §201(c).

tiff recommended dismissal of her complaint and also dismissal of the counterclaim for lack of consents. It is also obvious that the court would not have been able to do otherwise. Plaintiff correctly argues that a hearing on equitable distribution and alimony is precluded where a divorce cannot be entered in such circumstances, *Dech v. Dech,* 342 Pa. Super. 17, 492 A.2d 41 (1985), albeit there would have been no bar to consideration of alimony pendente lite or interim counsel fees by the special master but for plaintiff's refusal to appear.

Plaintiff's reliance on *Laxton v. Laxton,* 345 Pa. Super. 450, 498 A.2d 909 (1985) and *Mirarchi v. Mirarchi,* 226 Pa. Super. 53, 311 A.2d 698 (1973) is misplaced. While the entry of a decree in divorce was prohibited, plaintiff's argument that "she and she alone could exercise control over her own action for divorce" and the reasons given for such control are unsupported by law and unacceptable in the context and mandate of the Divorce Code, i.e. "to make the law of marriage effective for dealing with the realities of matrimonial experience,[3] . . . Effectuate economic justice between [both] parties who are divorced or separated . . . and insure a fair and just determination of their property rights."[4]

I am not persuaded by plaintiff's claim that her reluctance to proceed stems from lack of adequate opportunity to obtain discovery. She filed the complaint one and one-half years ago, interrogatories were filed and answered almost a year ago, 10 months ago she agreed to the sale of marital property and received an advance of $10,000 on the proceeds with agreement to negotiate and if unsuccessful, to proceed with the matter in 60 days. Even

---

3. 23 P.S. §101(a)(1).
4. 23 P.S. §101(a)(6).

more incredible, the subject matter of the discovery desired by plaintiff is her own state of health, a matter completely within her own investigatory reach.

Nor am I persuaded that the authority of the court to enter a judgment of non pros is limited to the obviously unjust situation where a party is receiving alimony pendente lite while declining to take further action. There is something inherently repugnant in plaintiff's determination to prolong this litigation where no benefit redounds to either party from the continuation of the marital status, both are prevented from bringing this unhappy chapter of their lives to a close and the opportunity to make a fresh start is deferred at plaintiff's pleasure.

Other courts have also deprecated the delay resulting from such situations. In *Rueckert v. Rueckert,* 20 D.&C.3d 191 (1981), Judge Kaplan effectively described the "chilling" effect on the business endeavors of a party subject to the remedies provided in section 403(d) of the Divorce Code as well as the suspension of access to assets and interference in the regular course of business possible under other subsections of sections 401 and 403 during the pendency of the divorce where one party is ready to proceed and is held hostage by a recalcitrant plaintiff.

In *Lamp v. Lamp,* 63 Somerset L.J. 63 (1983) Judge Coffroth inveighed against the practice, "We are not sympathetic with divorce litigants who refuse to proceed in the divorce action yet want the court to use its powers under the Divorce Code as a bargaining chip as they jockey for position. . . . We recognize that mere pendency of litigation with its potential for the exercise of judicial power is inherently coercive; however, as stated in *Sprague v. Pumphrey,* 29 Somerset L.J. 202, 214 (1974):

"But the *attritional* use of the judicial power, whereby one party seeks to use it as a test of nerve, stamina or resources of the other party, instead of as a test of the merits of the cause, is a subversion of the judicial system and is impermissible. That is why the courts will not countenance the conversion of a judicial proceeding into a standing and indefinite coercive device by a hold order upon the judicial processes, which prevents the prompt and meritorious resolution of controversy and instead generates a war of nerves."

The conclusion of Judge Juliante, *Morrison v. Morrison,* 36 D.&C. 3d 516 (1983) that an allegation pursuant to indignities is equivalent to an allegation of irretrievable breakdown of the marriage has no appellate imprimatur but common sense supports his argument.

"If, indeed, plaintiff's purpose in this action is to terminate her marriage to defendant, as stated in her prayer for relief, and if, indeed, her condition is intolerable and life burdensome, the court finds no reason consonant with the purposes of the Divorce Code why she should not consent to the termination of this marriage. If, on the other hand, the marriage is not irretrievably broken, then there is no reason to continue these proceedings." Id at 521.

I therefore conclude that the authority of the court to grant judgment of non pros is recognized, *Laxton,* Id at 912, n. 4; subject, however, to the condition of notice imposed by *Hoffman v. Hoffman,* 350 Pa. Super. 280, 504 A.2d 356 (1986).

## ORDER

And now, this March 6, 1987, upon consideration of the within petition and answer, after argument and submission of briefs, it is hereby ordered, adjudged and decreed that the special master appoint-

ed by the court shall fix a date for hearing within 30 days hereof, and plaintiff shall present testimony on her allegations of indignities or file an affidavit of consent thereat. In the event of default thereof, upon praecipe of the special master, the prothonotary shall enter a judgment of non pros against plaintiff with respect to the cause of action for divorce and such other claims as have been joined in which relief is dependent upon the granting of divorce.