## Glenn Estate.

Argued September 25, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*H. David Rothman*, with him *Wiley A. Bucey, Jr.*, for appellant.

*G. Donald Gerlach*, with him *John C. Unkovic*, *C. Bryson Schreiner*, and *Reed, Smith, Shaw & McClay*, for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, January 19, 1973:

By his "Last Will and Testament", dated June 22, 1967, Richard A. Glenn bequeathed his personal estate to his adopted son, Richard B. Glenn. Testator also devised real estate to the appellant son. The residue is devised and bequeathed to Robert Lee Glenn, the decedent's brother, and the Mercantile Bank of Dallas, Texas, in trust. The trustees are directed to distribute the income to Richard B. Glenn, "for his benefit or that of his family", with discretion to invade the principal to benefit the appellant and his family. Distribution of shares of the principal is scheduled to be made to appellant, Richard B. Glenn, at ages thirty-five, forty and forty-five.[1]

---

[1] The testator provided that if Richard B. Glenn pre-deceased him, the personalty would be distributed to Robert Lee Glenn, his brother, and Vivian Phillips, his deceased wife's sister; the realty

The body of Richard A. Glenn was discovered on February 1, 1972. On February 2, 1972, appellant Richard B. Glenn was arrested and charged with his father's murder.[2]

Appellant has admitted to committing the acts resulting in his father's death, but he has interposed the defense of insanity. His criminal trial was scheduled for July 5, 1972, but was postponed, upon appellant's motion, pending the disposition of this appeal of the lower court's denial of appellant's Petition for an Advancement of funds from the decedent's estate. Appellant seeks an advancement purportedly necessary to defend the criminal indictment against him. The executor[3] has questioned, successfully in the court below, whether the Slayer's Act, Act of August 5, 1941, P. L. 816, §§1-16, 20 P.S. §§3441-3456, should bar appellant's advancement.

The Slayer's Act provides that "[n]o slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent. . . ." Act of August 5, 1941, P. L. 816, §2, 20 P.S. §3442. The term "slayer" is defined in the Act as "any person who

would pass to the residuary estate and the principal of the trust would inure to the benefit of Robert Lee Glenn, or his issue, and the Mt. Lebanon United Presbyterian Church.

[2] At the Coroner's Inquest, the Commonwealth proffered the testimony of a female companion of Richard B. Glenn, who had spent the night of the murder at the decedent's home. She testified that she heard a struggle in the basement and that, upon entering the basement, she saw the appellant standing over decedent's battered body. The witness also testified to assisting appellant in the removal of decedent's body from his home. The corpse was removed to West Virginia, where it was later discovered.

[3] Robert Lee Glenn, the decedent's brother, was named executor. The will provided that in the event of his unwillingness or inability, Mellon National Bank and Trust Company should serve as executor. Robert Lee Glenn renounced his right to serve and letters testamentary were thus issued to Mellon National Bank and Trust Company.

participates, either as a principal or as an accessory before the fact, in the wilful and unlawful killing of any other person." *Id.* §1, 20 P.S. §3441.

Appellant urges that the order of the lower court denying appellant's advancement abridges the presumption of innocence in his forthcoming criminal proceeding, thereby denying him due process and equal protection of the law.

Appellant cites *In re Tarlo's Estate,* 315 Pa. 321, 172 Atl. 139 (1934), for the proposition that an adjudication of guilt in a prior criminal proceeding is necessary before the alleged "slayer" can be barred from inheritance. *Tarlo's Estate,* decided on the basis of the precursor of the present Slayer's Act,[4] held that the estate of a father who fatally shot his daughter, and then committed suicide, was not precluded from taking the daughter's estate by inheritance, since the father had not been "adjudged" guilty of murder. The prior Act contained the provision that "[n]o person who shall be finally *adjudged guilty . . . of murder . . .* shall be entitled to inherit. . . ." (Emphasis added.) Since the prior Act is repealed, and the Slayer's Act contains no such similar language, the holding in *Tarlo's Estate* is a relic without moment in this matter.

Appellant has taken the position that no disinheritance is possible without prior conviction and that no conviction can constitutionally follow without permitting him the advancement of an amount sufficient to construct the defense of insanity to the criminal charges against him. It is clear that a conviction of murder proved by evidence beyond reasonable doubt is a bar to the Orphans' Court relitigating the issue of guilt or innocence of the convicted "slayer". *In re Kravitz*

---

[4] Section 23 of the Intestate Act, Act of June 7, 1917, P. L. 429, §23, 20 P.S. §136, *repealed,* Act of August 5, 1941, P. L. 816, §16, 20 P.S. §3456.

*Estate,* 418 Pa. 319, 211 A. 2d 443 (1965). But, the appellant's argument that he has been denied due process and equal protection of the law, by reason of the fact that the presumption of innocence is curtailed when an advancement from decedent's estate is denied, presupposes that a criminal conviction is a necessary prerequisite to his disinheritance under the Slayer's Act. There is no hint in the Act that a prior criminal conviction of murder is the necessary antecedent of disinheritance.

Appellant also urges that the denial of an advancement from the estate will effect a denial of his right to the effective assistance of the counsel of his own choice where a private fund, *i.e.,* the estate, is available to permit the exercise of that right. As a corollary, he urges that the denial of an advancement from the estate will prevent him from obtaining the psychiatric evaluation necessary to establish the defense of insanity.

The right of an indigent defendant in a criminal trial to the assistance of counsel is a fundamental right essential to a fair trial. *Gideon v. Wainwright,* 372 U.S. 335 (1963). Rule 318 of the Rules of Criminal Procedure comports with the mandate of *Gideon.* The indigent's right to counsel in this Commonwealth is codified in the Public Defender Act, Act of December 2, 1968, P. L. 1144, §6, *as amended,* 16 P.S. §9960.6, which furnishes, *inter alia,* legal counsel to any person charged with an indictable offense who is unable to obtain counsel for lack of sufficient funds. Furthermore, while generally the appellant is not entitled as a matter of right to state-appointed psychiatric expert testimony respecting his sanity,[5] the Mental Health and

---

[5] *Commonwealth ex rel. Smith v. Ashe,* 364 Pa. 93, 71 A. 2d 107, *cert. denied,* 340 U.S. 812 (1950); *Commonwealth v. Green,* 346 Pa. 172, 29 A. 2d 491 (1943).

Mental Retardation Act, Act of October 20, 1966, P. L. 96, art. IV, §408, 50 P.S. §4408, does establish a procedure for the appointment of physicians to determine the competence of criminal defendants. Appellant, if indigent, is thus provided both appointed counsel and the machinery for psychiatric evaluation.

Assuming there is support for the untenable position that the indigent accused has the right to the *private* counsel of his choice, and not merely appointed counsel, we still could not permit an accused "slayer" to inherit from his alleged victim, to the extent necessary to defray the cost of his defense. The express language of the Act prohibits the "slayer" from benefiting *"in any way"* from the decedent's estate. Any advancement of funds before adjudicating the appellant's culpability would obviate the legislative policy underpinning the Act.

Appellant contends alternatively that, irrespective of whether the advancement of funds is statutorily or constitutionally compelled, the expenditure of estate funds for the counsel of appellant's choice and for psychiatric evaluation is within the administrative ambit of the executor. It is argued that these expenditures would effectuate the testator's intent, and thus could properly be made. We find no indication on the record, nor does reason dictate, that decedent's testamentary intent would be promoted by the grant of appellant's Petition for Advancement. We therefore hold that the executor's refusal to grant the Petition for Advancement was not an abuse of discretion.

Order affirmed. Appellant to pay costs.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the result solely on the ground that the record fails to establish that the corporate trustee abused its discretion by refusing to invade the corpus of the trust and make advancements from that source to

the appellant. The trust vests in the trustee the "authority to use so much of the principal thereof *as it deems advisable* for said son's support, education and welfare and that of his family." (Emphasis added.)

Mr. Justice MANDERINO joins in this concurring opinion.