SUSAN HOWSDEN, SPECIAL ADMINISTRATOR OF THE ESTATE OF
JUANA LEE ROLENC, DECEASED, APPELLANT, V. CLEMENT F.
ROLENC ET AL., APPELLEES.
360 N.W.2d 680

Filed January 4, 1985.   No. 83-637.

Edward D. Hotz of Hotz, Kizer & Jahn, P.C., for appellant.

Hyman Polsky of Bailey, Polsky, Cada & Todd, and George Brugh, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

Susan Howsden, as special administrator of the estate of Juana Lee Rolenc, appeals from the order of the trial court denying her motion for revivor filed in the marriage dissolution proceeding in which Juana Lee Rolenc was the petitioner and Clement F. Rolenc the respondent.

The original petition in the dissolution action was filed on March 31, 1981. On June 12, 1981, without either of the parties being present in person in court, a decree of dissolution was entered by the trial court pursuant to an amended petition, affidavit, and stipulation filed by the petitioner that day. The decree dissolved the marriage, awarded custody of the minor

child of the parties to the respondent, and made no division of property.

On December 2, 1981, within the 6-month period provided in Neb. Rev. Stat. § 42-372 (Reissue 1984), the petitioner filed an affidavit and motion to vacate and set aside the decree of dissolution. The affidavit and motion alleged that the decree had been obtained by fraudulent representations made by the respondent to the petitioner, that the parties had continued to live together until on or about November 20, 1981, and that the petitioner was not competent at the time she signed the petition, affidavit, and stipulation because of injuries she had sustained in an automobile accident. The petitioner alleged the divorce action was initiated only as a convenience to the respondent, as a means to rearrange his financial affairs, and she agreed to it only upon his representation they would remarry. The petitioner further alleged she discovered in November 1981 that her husband's representations were false, that he never intended to remarry her, and that he intended to defraud her of her property rights and alimony. Although the motion sought to vacate the decree entirely, it is clear that the petitioner intended that the marriage remain dissolved and that she obtain custody of the minor child, child support, and a division of property.

Juana Lee Rolenc died on May 11, 1983, 5 days before the hearing. The record has been enlarged to show that on October 15, 1984, the respondent pleaded guilty to a charge of second degree murder in causing her death. The principal issue before us is whether the action to vacate the decree of dissolution for fraud, which abated upon the death of the petitioner, which was caused feloniously by the respondent, is subject to revivor. The appellant has also requested attorney fees for services rendered from the date the motion to vacate was filed up to the present time.

The general rule is that an action for dissolution of a marriage abates upon the death of one of the parties and is not subject to revivor. *Williams v. Williams*, 146 Neb. 383, 19 N.W.2d 630 (1945). The theory of the general rule is that the death of one of the parties destroys the subject matter of the action and that matters of alimony and property rights are only incidental to the main object of the action.

We believe the general rule is not applicable where unusual circumstances such as are present in this case are involved. The motion filed by the petitioner was premised on fraud by the respondent. Neb. Rev. Stat. § 25-1401 (Reissue 1979) provides that causes of action for any deceit or fraud shall survive, notwithstanding the death of the person entitled to the same.

There is a strong public policy against allowing a person who commits a homicide to benefit in any way from the death of the victim. Neb. Rev. Stat. § 30-2354 (Reissue 1979) provides in part:

(a) A surviving spouse, heir or devisee who feloniously and intentionally kills or aids and abets the killing of the decedent is not entitled to any benefits under the will or under this article, and the estate of the decedent passes as if such spouse, heir, or devisee had predeceased the decedent. Property appointed by the will of the decedent to or for the benefit of such devisee passes as if the devisee had predeceased the decedent.

(b) Any joint tenant who feloniously and intentionally kills or aids and abets the killing of another joint tenant thereby effects a severance of the interest of the decedent so that the share of the decedent passes as his property and such joint tenant has no rights by survivorship. This provision applies to joint tenancies and tenancies by the entirety in real and personal property, joint accounts in banks, savings and loan associations, credit unions and other institutions, and any other form of coownership with survivorship incidents.

(c) A named beneficiary of a bond, life insurance policy, or other contractual arrangement who feloniously and intentionally kills or aids and abets the killing of the principal obligee or the individual upon whose life the policy is issued is not entitled to any benefit under the bond, policy or other contractual arrangement, and it becomes payable as though such beneficiary has predeceased the decedent.

*(d) Any other acquisition of property or interest by the killer or by one who aids and abets the killer is treated in accordance with the principles of this section.*

(Emphasis supplied.)

The effect of the death of the petitioner at the hands of the respondent was to forestall any equitable division of the marital estate and to permit the respondent to retain all of the property for himself.

In *Jacobson v. Jacobson*, 146 N.J. Super. 491, 370 A.2d 65 (1976), the husband, who was charged with killing his wife, moved to abate a pending divorce action. In holding that the action should not abate as to the issue of equitable division of property, the court stated at 493-97, 370 A.2d at 66-68:

> The novel question is whether, by reason of the deceased wife's inability to pursue her divorce action, her estate and her heirs should be deprived of her rightful entitlement to equitable distribution.
>
> . . . .
>
> . . . If the wife had lived and secured her divorce, the court would have dealt with the assets and property of the parties, allocated those in an equitable manner between them and then would have considered the matters of custody, alimony and the rest. This is now impossible, made so by the homicide.
>
> . . . .
>
> If I were to abate the issue of equitable distribution because the wife is dead, then no equitable distribution takes place because no divorce can be entered. The assets in the name of and held by the husband would remain his, undisturbed. If it should develop that he is responsible for his wife's death, then he would be profiting by his own wrongdoing. The four children of this marriage, the heirs of the wife and the natural objects of her bounty, would thus be deprived of rights which are important property rights to them.
>
> "No one should be allowed to profit [from] his own wrong." This was the law established in this state in *Whitney v. Lott*, 134 *N.J. Eq.* 586 [36 A.2d 888] (Ch. 1944), announcing the legal principle that the felonious killer of a testator, who inherits under the last will and testament, cannot take; equity imposed a constructive trust on such inheritance in favor of the other rightful

heirs. The court invoked the common law principle against permitting one to profit by his own wrong. This ruling was followed in *Estate of Kalfus v. Kalfus*, 81 *N.J. Super.* 435 [195 A.2d 903] (Ch. 1963); *Estate of Wolyniec v. Moe*, 94 *N.J. Super.* 43 [226 A.2d 743] (Ch. 1967).

. . . .

Sitting in equity where we regard as valid the maxim that equity regards that as done which ought to be done, where we follow precedent that a wrongdoer should not profit by his own wrong, it strikes me as wrong, unfair and grossly inequitable to permit the husband in this case to thwart the intent of the Legislature to grant married women rights in property which they never enjoyed before — to recognize their contributions to marriage as wives and homemakers.

I therefore hold that this case presents unusual, tragic facts and circumstances that call out to equity to find a remedy. Equitable distribution is the remedy and I will not abate it. The estate of the deceased wife should be added as a party to the action, with leave to proceed in the interests of her heirs. My decision is based on the tragic circumstances of this case. Other situations should be dealt with on their own peculiar facts.

See, also, *Craddock's Adm'r v. Craddock's Adm'r*, 158 Va. 58, 163 S.E. 387 (1932), in which the Supreme Court of Appeals of Virginia held that an action to set aside a judgment in a divorce action was subject to revivor after the deaths of the parties.

For the reasons stated it was error for the trial court to deny the motion for revivor under the circumstances of this case. We decide only that the action should be revived in the name of the personal representative of Juana Lee Rolenc and allowed to proceed to determine whether by fraud and homicide the respondent deprived the petitioner of an equitable division of the marital estate which she would have received except for her death, which was caused by the respondent. All other issues, including the right of the personal representative to recover attorney fees and expenses, if any, from the respondent are reserved for determination by the trial court.

The order of the trial court is reversed and the cause

remanded for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.