492 A.2d 41

**Gerald D. DECH, Appellant,**

**v.**

**Janet K. DECH, Appellee.**

**Gerald D. DECH, Appellee,**

**v.**

**Janet K. DECH, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 1, 1984.

Filed April 26, 1985.

18

William H. Agnew, Nazareth, for appellant (at 331) and appellee (at 478).

John R. Vivian, Jr., Easton, for appellant (at 478) and appellee (at 331).

Before BECK, HESTER and ROBERTS, JJ.

BECK, Judge:

This is an appeal[1] from a trial court order denying the exceptions of appellant Gerald D. Dech and appellee/cross-appellant Janet K. Dech to a master's report and recommendations for equitable division and deferred distribution of marital property and for alimony payable to Mrs. Dech. We vacate in part and affirm in part.

In this appeal Mr. and Mrs. Dech question whether the trial court abused its discretion[2] in (1) dividing and deferring distribution of the parties' marital property; (2) awarding Mrs. Dech alimony before the entry of a divorce decree; (3) assessing each party's share of the costs; (4) requiring the parties to pay their respective counsel fees, and (5) finding the master's fees reasonable.

1. This appeal is governed by the Divorce Code, Act of April 2, 1980, P.L. 63, 23 P.S. §§ 101–801.

2. Orders pursuant to the Divorce Code for property distribution, alimony, costs, and counsel fees are "reviewed only for an abuse of discretion and not broadly, as is the actual decree in divorce." *Remick v. Remick,* 310 Pa.Super. 23, 30, 456 A.2d 163, 166 (1983); *Ruth v. Ruth,* 316 Pa.Super. 282, 462 A.2d 1351 (1983).

A brief factual history will facilitate resolution of the first two issues which we shall address in tandem. The parties were married on December 26, 1970, and separated on February 4, 1982, at which time Mr. Dech moved from the marital residence. On February 22, 1982, Mr. Dech filed a complaint in divorce which alleged an irretrievable breakdown in the parties' marital relationship and requested that the court enter a divorce decree and equitably divide and distribute the parties' marital property. On May 7, 1982, Mrs. Dech submitted an answer and counterclaim which averred that the parties might be reconciled through court-ordered marriage counseling and further sought alimony pendente lite, alimony, and equitable division and distribution of the parties' marital property.

A master was appointed on June 16, 1982, to evaluate the parties' property for the purposes of equitable division and distribution. On December 3, 1982, in response to Mrs. Dech's petition, the trial court expanded the master's function "to include the duty and power to make recommendations to the Court, in accordance with the Pennsylvania Rules of Civil Procedure."[3] Based upon the evidence received at two hearings, the master filed a comprehensive report (Pa.R.C.P. No. 1920.54) which principally advised that Mr. Dech received his nonvested pension benefits plus deferred distribution of forty percent of the sale price of the marital residence[4] and that Mrs. Dech receive deferred distribution of sixty percent of the sale price of the marital residence plus alimony until the sale of the marital residence.

After reviewing the parties' positions on the underlying divorce issue and the master's recommendations on alimony

3. *See* Pa.R.C.P. Nos. 1920.51–1920.54.

4. The sale of the marital residence was made contingent upon the happening of the first of three events: "(a) Wife receives an inheritance from her mother in excess of $20,000.00; (b) Wife obtains employment in the computer science field; (c) The expiration of a three-year period." We agree with Mr. Dech that the reference to a three-year period is ambiguous because neither the commencement date nor the termination date of the period is specified.

and equitable division and distribution of the parties' marital property, the trial court determined that in accordance with section 401(b) of the Divorce Code, 23 P.S. § 401(b), and Rule 1920.52(c), it was empowered to decide the alimony and property matters without first issuing a decree of divorce.[5] We disagree.

■ Section 301(a) of the Code, 23 P.S. § 301(a), states that a court shall ascertain and dispose of property rights between spouses and shall order alimony "in conjunction with any decree *granting* (emphasis added) a divorce or annulment." Similarly, section 401(b) declares that orders determining alimony and property interest between the parties shall be included in any "decree *granting* (emphasis added) a divorce or annulment." Alimony is defined in section 104 of the Code, 23 P.S. § 104, as an "order of support ... in conjunction with a decree *granting* (emphasis added) a divorce or annulment." Additionally, section 401(j) of the Code, 23 P.S. § 401(j), explains that "[w]henever a decree ... is *granted* (emphasis added) which nullifies or absolutely terminates ... matrimony, any ... property rights ... dependent upon such matrimonial relation ... are terminated." Finally, section 402 of the Code, 23 P.S. § 402, affords the parties freedom to dispose of their separate property "whenever a decree of annulment or divorce is *decreed* (emphasis added) by a court of competent jurisdiction." Construing together these provisions of the Code and attributing to them their plain meaning,[6] we conclude

5. The trial court also relied upon our decision in *Wolk v. Wolk,* 318 Pa.Super. 311, 464 A.2d 1359 (1983), that divorce and economic claims may be bifurcated. However, *Wolk* is distinguishable from the case sub judice because in *Wolk* the trial court first granted a divorce decree and then in a subsequent proceeding adjudicated the parties' property rights. By contrast, in the present case, the trial court decided the parties' property rights without having dissolved the parties' marriage.

6. In statutory interpretation we are guided by the following precepts. "[T]he sections of the statute must be read together and construed with reference to the entire statute.... A construction which fails to give effect to all provisions of a statute ... must be avoided." *Wilson v. Central Penn Industries, Inc.,* 306 Pa.Super. 146, 150, 452 A.2d 257, 259 (1982); section 1921 of the Statutory Construction Act of 1972, 1

that although the Code permits bifurcated proceedings, the entry of a divorce decree is a Code prerequisite to an order for alimony or equitable division and distribution of marital property.[7]

The statute is based on sound policy in mandating the entry of a divorce decree as a predicate to equitable distribution. If the parties decided to reconcile before the entry of decree, or if either or both parties die before the entry of decree, the premature distribution would convert property held by one or the other party or by the parties as joint tenants into individual ownership, thereby making it difficult, if not impossible, to place the estates in status quo ante. It would be like Humpty Dumpty. Once he fell, "all the kings horses and all the king's men, couldn't put Humpty Dumpty together again." Consequently, we vacate the trial court's order awarding alimony to Mrs. Dech and dividing and distributing the parties' marital property.

 With respect to the parties' three remaining issues, we find that the trial court did not abuse its discretion. Mr. Dech argues that most of the costs associated with the resolution of the parties' dispute resulted from the expansion of the master's duties.[8] Since the master's duties were

Pa.C.S. § 1921. "[W]here the words of the statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.... [T]here is no basis for concluding that the spirit of the legislation intended anything more than what the plain meaning of the words used convey [sic]." *In re Estate of Fox*, 494 Pa. 584, 588–89, 431 A.2d 1008, 1011 (1981); 1 Pa.C.S. § 1921. "The words and phrases used in any legislation are to be construed 'according to their common meaning and accepted usage....'" *Fireman's Fund Insurance v. Nationwide Mutual Insurance*, 317 Pa.Super. 497, 502, 464 A.2d 431, 434 (1983); section 1903 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903.

7. *See Remick v. Remick*, 310 Pa.Super. 23, 29 n. 4, 456 A.2d 163, 166 n. 4 (1983) ("Pennsylvania law ... permits an award of alimony following a permanent divorce.").

8. We further find that the trial court did not err in increasing the master's duties beyond those enumerated in Northampton County's local rule 1920.51(g). The master's expanded duties conformed with Pa.R.C.P. No. 1920.54. (In the interest of completeness we note that where, as here, a complaint in divorce alleges an irretrievable breakdown of the marital relationship, a master may not be appointed to

enlarged in response to Mrs. Dech's petition, Mr. Dech maintains that Mrs. Dech should pay a larger portion of the costs. However, inasmuch as both parties requested equitable division and distribution of their marital property and the major portion of the master's work related to the parties' property apportionment, Mr. and Mrs. Dech benefitted equally from the master's augmented capacity. Hence, we cannot say that the trial court abused its discretion in adopting the master's recommendation of the parties' even division of the costs.[9]

■■■ Contrary to the trial court's decision to have the parties assume their own counsel fees, Mrs. Dech asserts that she is entitled to have reasonable counsel fees paid by Mr. Dech. The determination to award counsel fees is made on a case-by-case basis after an analysis of all relevant factors including the "husband's ability to pay, the separate estate of the wife, the character, situation and surroundings of the parties.... The statute contemplates ... the administration of fair and impartial justice by placing the parties on a par in defending their rights." *Jack v. Jack,* 253 Pa.Super. 538, 545–46, 385 A.2d 469, 473 (1978); *Fried v. Fried,* 326 Pa.Super. 271, 473 A.2d 1087 (1984). "Counsel fees are not to be awarded to either spouse automatically.... Actual need must be shown in order to justify an award ... so that both parties are placed 'on a par' in defending their rights." *Hoover v. Hoover,* 288 Pa.Super. 159, 161–62, 431 A.2d 337, 338 (1981). In the present case, Mrs. Dech has not established actual need for payment of her counsel fees by Mr. Dech. The evidence of

hear the underlying divorce claim. Pa.R.C.P. Nos. 1920.42(a) & 1920.-51(a)(2)(ii).)

9. Mr. Dech also protests the payment of the master's fee, stenographer's fee and home appraiser's fee from the parties' liquid marital assets which had been frozen by an order of the trial court. The purpose of the "freeze" order was to prevent either spouse's unilateral dissipation of the marital assets to the disadvantage of the other spouse. Use of the joint marital assets to pay the parties' joint obligations to the master and the home appraiser benefitted both parties and thus did not violate the court's freeze order; therefore, the trial court's subsequent approval of said payment was not error.

record shows that the parties have similar economic resources. Therefore, the trial court did not err in requiring each spouse to pay his own attorney's fees.

■ Finally,[10] Mr. Dech contests the reasonableness of the master's fees. Having reviewed the master's itemized bills, the master's comprehensive written report, and the transcripts of the master's hearings, we affirm the trial court's determination that the master's fees are reasonable in light of the "complex and prolonged nature" of the parties' litigation.

Accordingly, we vacate those portions of the trial court's order concerning alimony for Mrs. Dech and division and distribution of the parties' marital property and affirm those portions of the order concerning the payment of counsel fees and costs including the master's fee.

---

**10.** Although Mrs. Dech's appellate brief also seeks our review of the trial court's denial of alimony pendente lite, we do not address this issue because Mrs. Dech failed to include it in her exceptions to the master's report and thus waived it for purposes of appeal. Pa.R.C.P. No. 1920.55(a).