532 A.2d 807

Walter L. DRUMHELLER, Franklin W. Drumheller, and
Betty Jean Armbruster, Executors of the Estate of
Elizabeth P. Rothman, Deceased, Appellants,

v.

David MARCELLO, Administrator of the Estate of Sidney J.
Rothman, Deceased, Appellee.

Supreme Court of Pennsylvania.

Argued June 16, 1987.

Decided Oct. 15, 1987.

R. Michael Edridge, Palmerton, Herbert S. Levin, Philadelphia, for appellants.

John R. Mondschein, Allentown, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is the appeal of Walter L. Drumheller, Franklin W. Drumheller and Betty Jean Armbruster, Executors of the Estate of Elizabeth P. Rothman, Deceased (Appellants) from the opinion and order of the Superior Court affirming an order of the Court of Common Pleas of Lycoming County which dismissed an action in divorce and request for equitable distribution which had been instituted by Appellant's decedent, Elizabeth P. Rothman, against Sidney J. Rothman, now also deceased, and represented by David Marcello, Administrator of the Estate of Sidney J. Rothman, deceased, (Appellee).

The facts are not in dispute and can be summarized as follows. Sidney J. Rothman and Elizabeth P. Rothman were married on February 13, 1969. On April 28, 1983, Mrs. Rothman instituted an action in divorce against her husband seeking, in addition to a decree in divorce, an equitable distribution of marital property. The complaint also contained a request for counsel fees. Mr. Rothman filed a timely answer and interposed a counterclaim. During the course of discovery proceedings, various orders were entered by the Court of Common Pleas of Lycoming County including an order directing Mr. Rothman to make support payments of $2,000.00 per month and to advance to Mrs. Rothman the sum of $10,000.00 on account of her distributive share to which she would be entitled following the issuance of a decree in divorce.

The Honorable Robert J. Wollet, Judge of the Court of Common Pleas of Lycoming County, also directed that Mrs. Rothman have exclusive use of the parties' condominium in Pompano Beach, Florida, from February 15, 1984, until April 15, 1984. Shortly after Mrs. Rothman took possession of the condominium, she was shot and killed by her husband, who had been waiting for her inside the condominium. After killing his wife, Mr. Rothman turned the gun on himself and took his own life.

Following these tragic events, the children of Mrs. Rothman[1] (Appellants) were appointed Executors under her Last Will and Testament and were substituted as parties to the divorce action. David Marcello (Appellee) was appointed Administrator of the estate of Mr. Rothman and was substituted as the defendant in the divorce action.

Appellee filed a motion to dismiss the divorce action and all ancillary claims since the original parties to the action were dead. The trial court granted the motion on January 15, 1985, and Appellants timely filed an appeal to the Superior Court. That court affirmed the trial court's order dismissing the causes of action for divorce and equitable distribution, without prejudice to the right of Appellant's estate to pursue a claim for counsel fees. *Drumheller v. Marcello*, 351 Pa.Superior Ct. 139, 505 A.2d 305 (1986).

We granted Appellants' Petition for Allowance of Appeal to examine whether an action for divorce and equitable distribution abates where a wife is killed at the hands of her husband.

■ An action in divorce is personal to the parties and, upon the death of either party, the action necessarily dies. *See, Reese v. Reese*, 351 Pa.Superior Ct. 521, 506 A.2d 471 (1986); *Haviland v. Haviland*, 333 Pa.Superior Ct. 162, 481 A.2d 1355 (1984). We recently reiterated this in *Clingerman v. Sadowski*, 513 Pa. 179, 519 A.2d 378 (1986), where we noted that:

1. There were no children born to Mr. and Mrs. Rothman from their marriage, although they each had children born to them from prior marriages.

The primary object of a suit for divorce is personal, that is, to change the relation of the parties to each other. In the case of the death of either party that object can no longer be achieved, the marital relation having been terminated by death. The divorce action also terminates since the court can no longer decree a divorce between the parties.

*Clingerman*, 513 Pa. at 189, 519 A.2d at 384.

■ Once a decree in divorce is granted, however, and thereafter one of the parties dies, the court can continue with the equitable distribution of the marital property. See, *Pastuszek v. Pastuszek*, 346 Pa.Superior Ct. 416, 499 A.2d 1069 (1985).

■ Statutorily, equitable distribution occurs only upon the issuance of a divorce decree. *Bacchetta v. Bacchetta*, 498 Pa. 227, 445 A.2d 1194 (1982). *See also, Dech v. Dech*, 342 Pa.Superior Ct. 17, 492 A.2d 41 (1985); 23 P.S. § 401.

Appellants agree that the general principles as to the abatement of divorce actions are as we have recited but strenuously argue that their application to situations where one spouse kills another must be different because of various provisions of the Slayer's Act.[2] They argue that the Act insures that slayers shall not in any way acquire any property or any benefit as a result of the death of their victim and in this case, by slaying Mrs. Rothman, Mr. Rothman acquired a benefit, i.e., the avoidance of equitable distribution.

The Slayer's Act provides at 20 Pa. C.S. § 8802, in pertinent part, that:

No slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent ...

In our case *In re: Kravitz Estate*, 418 Pa. 319, 211 A.2d 443 (1965), we had occasion to construe this same language which was then part of the Slayer's Act of 1941. We noted

2. Act of June 30, 1972, P.L. 508, No. 164, § 2, et seq., effective July 1, 1972, 20 Pa.C.S. § 8801, et seq.

that the Act enunciates not only sound law, but *wise public policy.* "The intent of the legislature and the language of the Slayer's Act are, we believe, clear, a person convicted of murder is not entitled to receive any property of the person he (or she) willfully or unlawfully killed." *Kravitz*, 418 Pa. at 327, 211 A.2d at 447.[3] This conclusion was arrived at by considering the clear language of the statute and Section 15 of the statute which provided:

> This chapter shall not be considered penal in nature, but shall be construed broadly in order to effect the policy of this State that no person shall be allowed to profit by his own wrong, wherever committed."

20 P.S. § 3455 now found at 20 Pa.C.S. § 8815.

■ Where a party seeks to invoke the protections available under the Slayer's Act, a court must determine whether the slayer acquired any property or benefit by slaying the decedent, keeping in mind that the sections of the statute are to be construed broadly to effect the policies of the State.

■ As applied to this case, we must determine whether Mr. Rothman acquired any property or benefit by slaying his wife. For if he did, then by the clear language of the statute, he must be stripped of it in furtherance of the public policy of this Commonwealth.

> The balance struck by the legislature is that between the prevention of the slayer's self-enrichment by his crime, on the one hand, and his right to retain that property which he possessed immediately before the slaying, on the other hand. The principal focus of the act is not ... one of balancing the slayer's interests against the interests of his victim's estate nor does the act reflect a legislative intent to profit the decedent's estate by diminishing any property right held by the slayer ... the intent of the

**3.** In fact, the Act does not even require that the slayer be convicted for its provision to be operable and where, as here, there is no factual dispute but that Mr. Rothman murdered his wife, he is clearly a "slayer" within the meaning of the Act and all its provisions can be raised to deprive him of property or benefits he acquired by slaying his wife.

Slayer's Act is "clear—a person convicted of murder is not entitled to receive any property of the person he (or she) wilfully or unlawfully killed." While the operation of the act may in certain situations redound to the benefit of the decedent's estate, such instances are necessary by-products of the prevention of windfalls to the slayer. *In re: Estate of Larendon*, 439 Pa. 535, 266 A.2d 763 (1970).

In considering whether Mr. Rothman acquired any *property* or *benefit* by slaying his wife, we note that the assets Mr. and Mrs. Rothman acquired during their marriage, however titled, and over whose proper distribution they were litigating at the time of the murder, are broadly designated as "marital property" under our Divorce Code, 23 P.S. § 401,[4] but as indicated earlier, such property is

4. Act of April 2, 1980, P.L. 63, 23 P.S. § 401, grants wide powers to our courts in equitably dividing marital property between parties and provides in pertinent part:

(e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except: (1) Property acquired in exchange for property acquired prior to the marriage except for the increase in value during the marriage. (2) Property excluded by valid agreement of the parties entered into before, during or after the marriage. (3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage. (4) Property acquired after separation until the date of divorce, provided however, if the parties separate and reconcile, all property acquired subsequent to the final separation until their divorce. (5) Property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the time proceedings for the divorce are commenced. (6) Veterans' benefits exempt from attachment, levy or seizure pursuant to the act of September 2, 1958, Public Law 85–857, 72 Statute 1229, as amended, except for those benefits received by a veteran where such veteran has waived a portion of his military retirement pay in order to receive Veteran's compensation. (7) Property to the extent to which such property has been mortgaged or otherwise encumbered in good faith for value, prior to the time proceedings for the divorce are commenced. (f) All property, whether real or personal, acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is

identifiable and distributable only upon entry of a decree in divorce. *Dech, supra.* Such being the case, Mr. Rothman did not acquire any "marital property" by slaying his wife, since their "property rights" had not yet been declared by a divorce decree.

It is argued, however, that by slaying his wife, Mr. Rothman avoided the judicial dissolving of his marriage and the judicial determination of what interest Mrs. Rothman had to assets the couple had acquired during their marriage which may have been titled in individual names or by the entireties or as joint tenants with the right of survivorship. These assets would have been included as marital property and would have been subject to being distributed in whole or in part to Mrs. Rothman, but for her slaying at the hands of her husband.

By slaying Mrs. Rothman, Mr. Rothman avoided having a court direct him to hand over to Mrs. Rothman property which they had accumulated during their marriage, and thereby gained an advantage over her. Anything that works to the advantage or gain of a recipient can be defined as a benefit. *Winthrop Company v. Clinton,* 196 Pa. 472, 46 A. 435 (1900), and we have little trouble in concluding that by slaying Mrs. Rothman, Mr. Rothman acquired a benefit.

While this benefit is not identifiable with particularity under the record as it now exists, enough is present for us to observe that both parties averred that they had acquired substantial assets during their marriage over whose distribution they could not amicably agree. The record also shows that extensive discovery was under way seeking to identify the property that the parties had and to what extent each party used same. Some assets were titled as entireties property, and some was retained in individual names, but was used by both parties.

■ Mr. Rothman's actions in killing his wife clearly prevented her from establishing her right to those assets, overcome by a showing that the property was acquired by a method listed in subsection (e).

and it is not good enough to suggest that Mrs. Rothman's heirs can seek retribution by receiving a statutory share of Mr. Rothman's estate or by filing a wrongful death action against his estate. While these are avenues open to Appellants, they are not exclusive remedies because they do not necessarily cover the interests that Mr. Rothman acquired from his wife by killing her.

In *Glenn Estate*, 450 Pa. 461, 299 A.2d 203 (1973), we denied a son's request, who had been accused of the murder of his father, to receive an advancement from his father's estate to pay for his defense. We found unpersuasive the son's argument that he had not yet been convicted of his father's death. We concluded that "we could not permit an accused 'slayer' to inherit from his alleged victim, to the extent necessary to defray the cost of his defense. The express language of the act prohibits the 'slayer' from benefiting *'in any way'* from the decedent's estate. Any advancement of funds before adjudicating the appellant's culpability would obviate the legislative policy underpinning the act." *Glenn*, 450 Pa. at 466, 299 A.2d at 206.

This policy is so strong that it compels the courts to identify any benefit a slayer acquired by killing his victim under any circumstance and then to take it from him. It makes no difference where or when the protections of the Slayer's Act are raised, for we know of no authority or section of the statute itself which restricts its application to probate proceedings or any other proceedings. That being the case, we see nothing improper about raising the protections of the Slayer's Act to prevent Appellee from terminating this divorce and equitable distribution proceeding prior to determining what interests Appellee's decedent would have been required to distribute to Mrs. Rothman and prior to making that distribution to her estate.

Anytime a "benefit" of any kind is identifiable, the Slayer's Act may be invoked to deprive the slayer of the benefit he has received. In the case *sub judice,* we clearly see that Mr. Rothman's act of murdering his wife benefited him to the extent of avoiding an equitable distribution of the

assets he and his wife accumulated during their fifteen-year marriage. Whatever assets he would have been compelled to give her, must be stripped from him. Any other result would obviate the legislative policy underpinning the Act.

Sister states that have considered the issue presented to us in this case are in uniform agreement that under normal circumstances the death of a spouse prior to the entry of a divorce decree terminates the divorce action and any equitable distribution proceedings that may be pending. *Simpson v. Simpson,* 473 So.2d 299 (Fla.App. 3rd Dist. 1985); *Howsden v. Rolenc,* 219 Neb. 16, 360 N.W.2d 680 (1985); *Segars v. Brooks,* 248 Ga. 427, 284 S.E.2d 13 (1981); *Jacobson v. Jacobson,* 146 N.J. 491, 370 A.2d 65 (1976).

Where one spouse kills the other spouse during the pendency of the divorce action, however, some courts permit the equitable distribution action to proceed since the effect of the death of the one spouse at the hands of the other is to forstall any equitable division of the marital estate and to permit the slayer to retain all of the property for himself. See *Howsden, Jacobson.* The other courts recognize this same gain by the slayer's crime but hold that the property so held by the slayer should be claimed in a separate probate proceeding by the deceased spouse's estate. *Simpson, Segars.*

The import of all these cases is that the courts recognize without exception that one spouse who kills the other spouse during the pendency of a divorce action avoids the equitable division of the marital estate thereby gaining valuable property and assets which he may otherwise be required to distribute to the other spouse. All the jurisdictions recognize this gain to be a benefit, as we do, but differ only as to the manner in which the murdered victim's estate can strip the slayer of his benefit.

Permitting the equitable distribution to proceed under these circumstances is the wiser approach because it takes into account the existence of the already developing record and allows a court with expertise under the Divorce Code to

complete the record and to determine the appropriate division of marital property and to award relief as required.

■ Since the Slayer's Act is necessarily to be construed broadly, we hold that under circumstances where a spouse slays another spouse prior to the entry of a decree in divorce, the slayer is estopped from terminating the equitable distribution action upon the legal theory that the divorce action abated.

The opinion and order of the Superior Court is reversed and the matter remanded to the Court of Common Pleas of Lycoming County for proceedings consistent with this opinion.

HUTCHINSON, J., files a concurring opinion.

FLAHERTY, J., files a dissenting opinion in which ZAPPALA, J., joins.

HUTCHINSON, Justice, concurring.

I agree with the majority that the Slayer's Act, 20 Pa.C.S. §§ 8801–8815, applies, and a proceeding for equitable distribution must continue if the slayer would, in fact, otherwise obtain a benefit. However, I believe non-abatement is better reached on the alternate, general ground that equitable distribution does not end upon the death of one party to a divorce action.

The majority's rationale implies a case by case inquiry as to who will benefit from a continuation of equitable distribution when one spouse slays another during divorce. Under this analysis, equitable distribution will sometimes abate and sometimes continue, even when one spouse kills the other. To solve the abatement puzzle the equitable distribution factfinder will have to decide who benefits, the slayer or his victim. The alternate ground avoids this difficulty. It also avoids any later inquiry into the parties' relative fault if the action is abated. Such an inquiry is possible not only when there is a slayer who would have benefited from a continuance, but whenever a death occurs during a divorce action. That inquiry into fault would

violate the major premise of our Divorce Code, Act of April 2, 1980, P.L. 63, No. 26, *as amended,* 23 P.S. §§ 101–801 (Supp.1987).

Under the Code, property is to be distributed upon dissolution of a marriage in a fair and equitable manner, without regard to fault. Abating an equitable distribution claim on one party's death throws the survivor back into the Probate, Estates and Fiduciaries Code for economic protection. It involves notions of fault. *See* 20 Pa.C.S. § 2106(a) (spouse who has "willfully and maliciously deserted the other spouse" has no right or interest in that spouse's real or personal estate for purposes of intestate succession); 20 Pa.C.S. § 2208 (surviving spouse who would not be entitled to a share of an intestate decedent's estate under 20 Pa.C.S. § 2106 has no right of election). This is contrary to the policies in our Divorce Code; it involves fault and neither fosters economic justice nor considers the welfare of the family.

Under our Divorce Code, whether the marital relationship has in fact dissolved, and thus whether the marital bond should be severed and property equitably distributed, is solemnly answered at the outset by the party beginning the action, subject only to formal recognition by the court at its conclusion. On the death of a party, we should recognize the acknowledgment that dissolution of the relationship had already occurred, and divide the marital property equitably. If we, instead, abate equitable distribution, we may deprive the surviving spouse of property by the very inquiry which our Divorce Code was meant to avoid.

I recognize the Divorce Code fails to speak expressly on abatement. In favor of abatement is a lingering common law notion that personal actions do not survive and that death resolves all questions of status. If marriage is to be treated as a partnership, as I believe the Divorce Code implies, equitable distribution of the couple's marital property when one dies is no less needed than equitable distribution of partnership property on the death of a partner. This position is in accord with the policies expressed in the Divorce Code and is a logical extension of the analysis this

Court has employed with respect to partition of entireties property. *See Clingerman v. Sadowski*, 513 Pa. 179, 519 A.2d 378 (1986). *See also id.*, 513 Pa. at 192, 519 A.2d at 385 (McDermott and Hutchinson, JJ., concurring).

FLAHERTY, Justice, dissenting.

Although the majority's resolution of the perplexing problems raised by this case is innovative, I must dissent. The issue in this case is not whether the estate of Mrs. Rothman will have any remedies against her alleged slayer, or even whether the provisions of the Slayer's Act will apply. Rather, the question presented is how shall these claims be presented and to which forum?

The majority's view is *not* that the estate of Mrs. Rothman is entitled to *additional* remedies because she was allegedly slain by her husband during the pendency of a divorce action, but rather, that in order for her estate to prevent the alleged slayer from profiting from his act, the divorce action must be allowed to continue after the deaths of the parties. I disagree.

The estate of a murdered spouse, under our longstanding rule, would not be permitted to continue the divorce action or to claim an equitable distribution of marital property after the deaths of the parties. But if the wife died of natural causes during the pendency of the divorce action, her estate also would not be permitted to continue the divorce action. The majority's reason for wanting to extend the right to continue a divorce action after the deaths of the parties, therefore, does not stem from a perception that divorce actions in general should survive the deaths of the parties, but instead relates to the narrow facts of this case. Slayers must be prevented from profiting from the deaths of their victims.

Even under a traditional approach to this case, however, a slayer would not benefit from his act. The purpose of the Slayer's Act—to prevent a slayer from benefiting from the death of his victim—may be effected by the decedent's survivors bringing a wrongful death action and by challenges presented during the administration of the victim's

estate. Should it be established then that the husband in this case murdered the wife, he would not, by operation of the Slayer's Act, be permitted to inherit anything from the victim. And should it be established in a wrongful death action that the husband in fact murdered the wife, presumably the wife's estate would be permitted a recovery against the husband's estate for that wrongful act. The wife's estate, therefore, even under a traditional approach has all of the remedies that are usually accorded to the survivors of a murder victim, and where this is true, I can see no need to alter well-established rules concerning the termination of divorce proceedings.

Additionally, although the exception mandated today by the majority would seem to be a narrow one, experience has shown that it is not likely to remain so. One can only imagine the future cases in which it will be argued that although certain legal relationships and rights formerly terminated with death, they should no longer so terminate. The camel's nose is under the tent, as it were. In sum, since there is no need for this new rule and since its creation can lead only to a clamoring for yet more extensions of a rule which should not have been extended in the first place, I would affirm the order of Superior Court.

ZAPPALA, J., joins this dissenting opinion.