J-A06039-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOSEPH L. TOPEL, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| OLIVIA J. TOPEL, | : | |
| | : | No. 1211 WDA 2017 |
| Appellee | : | No. 1283 WDA 2017 |

Appeal from the Decree Entered July 31, 2017
in the Court of Common Pleas of Erie County
Civil Division, at No(s): 12544-2012

BEFORE: BENDER, P.J.E, SHOGAN, and STRASSBURGER,* JJ.

MEMORANDUM BY: STRASSBURGER, J.  **FILED APRIL 13, 2018**

Joseph L. Topel (Husband) appeals from the July 31, 2017 divorce decree that, *inter alia*, provided for the equitable distribution of the marital assets of Husband and Olivia J. Topel (Wife).[1]  We affirm.

Husband and Wife began their relationship in Virginia.  The parties each had a child from a prior marriage, and they had two children together.  The parties decided to move to Pennsylvania, and Wife purchased a house in Waterford in January 2007, where they ultimately resided together with their children.

---

[1] Wife filed a cross-appeal at 1283 WDA 2017 which this Court *sua sponte* consolidated with Husband's appeal.  However, Wife has decided not to pursue arguments for reversal of the trial court's rulings, and instead supports affirmance.  Wife's Brief at 2.

* Retired Senior Judge assigned to the Superior Court.

The parties married in February 2008. It was Husband's fourth marriage, Wife's third. They sold their respective residences in Virginia, with Wife contributing $96,000 to Husband to enable him to pay off his mortgage, which had an outstanding balance greater than the market value of the property. Wife was a stay-at-home mother during the marriage until she resumed working outside the home in August 2011. Husband and Wife separated in February 2012.

Husband filed for divorce in July 2012; Wife filed for economic support and was awarded alimony *pendente lite* (APL). As the trial court aptly noted, this litigation now has lasted far longer than the marriage, with rounds of master hearings, exceptions, an interlocutory appeal and cross-appeal quashed by this Court *sua sponte*,[2] and now the instant timely-filed appeal. As Husband and the trial court have complied with Pa.R.A.P. 1925, this Court will address the following questions raised by Husband.

> I. Whether the lower court erred in entertaining a division of marital assets and issuing an order regarding same in light of the fact that no valid decree in divorce was entered prior to the distribution of marital property by the court.
>
> II. Whether the lower court erred in its application of the factors enumerated in the divorce code and in its application of the doctrine of equitable reimbursement thereby failing to equitably divide the marital estate.

---

[2] Order, 1/13/2017, filed in both 1864 WDA 2016 (Husband's appeal) and 1923 WDA 2016 (Wife's cross-appeal).

III.    Whether the lower court erred in refusing to terminate the APL order requiring husband to pay [APL] through the appeal process and upon any remand.

Husband's Brief at 8 (suggested answers and unnecessary capitalization and emphasis omitted).

Husband first contends that the master and trial court lacked jurisdiction to take evidence or address in any way the equitable distribution of the marital property before the divorce decree had been entered.  Husband's Brief at 25-27.  In support, Husband cites several cases for the proposition that there can be no equitable distribution of marital property outside the context of divorce proceedings.  Husband's Brief at 25 (citing, *inter alia*, **Drumheller v. Marcello**, 505 A.2d 305, 306 (Pa. Super. 1986), *rev'd*, 532 A.2d 807 (Pa. 1987)).

Husband is correct that a trial court's jurisdiction to distribute property flows from its power to terminate marriages in divorce, as "[e]quitable distribution is an incident of divorce, not marriage." **Campbell v. Campbell**, 516 A.2d 363, 366 (Pa. 1986).  However, that does not mean that a court in which divorce proceedings are pending is unable to take any action on the economic claims until after the divorce decree is entered.

Trial courts are "empowered to make equitable distribution **contemporaneously with** or subsequent to a decree in divorce." **Waddington v. Waddington**, 624 A.2d 657, 660 (Pa. Super. 1993) (citation and internal quotation marks omitted; emphasis added).  It follows that, in

order for the economic claims to be resolved contemporaneously with the entry of the divorce decree, the court may entertain proceedings concerning the economic issues prior to the entry of that decree. Indeed, our Supreme Court has entertained the merits of an appeal from an interlocutory "pre-divorce decree distributing marital property" after the distribution was rendered final by the subsequent entry of the divorce decree. *Campbell*, 516 A.2d at 366.

Here, the trial court entered the divorce decree on July 31, 2017, expressly incorporating therein the scheme of division of marital property that it had found to be equitable in a memorandum and order dated November 9, 2016. While the distribution order had been interlocutory before the entry of the decree, which is why this Court quashed the earlier appeal from that order, the order of equitable distribution was properly rendered final and appealable as of July 31, 2017. Husband's first issue is meritless.

Husband next contends that the trial court failed to apply properly the statutory factors applicable to determining the distribution of marital property, resulting in an inequitable distribution. Husband's Brief at 27. He also argues that his having to pay Wife equitable reimbursement "is not fair." *Id.* at 50.

We consider Husband's arguments mindful of the following.

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal

procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Reber v. Reiss*, 42 A.3d 1131, 1134 (Pa. Super. 2012) (quoting *Biese v. Biese*, 979 A.2d 892, 895 (Pa. Super. 2009)).

In fashioning an equitable distribution award, the trial court must consider, at a minimum, the eleven factors set forth in 23 Pa.C.S.[] § 3502…. These factors require the trial court to consider the relative economic positions of the parties and the nature of the parties' relationship. The section 3502 factors are not a simple formula, rather they serve as a guideline for consideration. The facts of a particular case mandate how the section 3502 factors will be applied.

*Gates v. Gates*, 933 A.2d 102, 105 (Pa. Super. 2007). The factors enumerated in section 3502 are as follows.

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a).

We do not evaluate the propriety of the distribution order upon our agreement with the court['s] actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of the [23 Pa.C.S. § 3502(a)] factors…. If we fail to find an abuse of discretion, the [o]rder must stand.

*Lee v. Lee*, 978 A.2d 380, 383 (Pa. Super. 2009) (quoting *Trembach v. Trembach*, 615 A.2d 33, 36 (Pa. Super. 1992)).

In the instant case, the master enumerated the statutory factors in the report filed March 1, 2016. Master's Report, 3/1/2016, at 3-4. While not

offering her findings in a factor-by-factor list, the master addressed and discussed at length the relevant information, covering the parties' ages, offspring, and prior marriages; their educations, abilities, employment and incomes; their respective contributions to the marriage, financial and otherwise; and their separate and marital property. *Id.* at 4-10. Upon these findings, the master recommended a 52% (Wife) – 48% (Husband) scheme for dividing the property, with, *inter alia*, each party retaining his or her respective vehicle, personalty, and credit card debt; specific properties and accounts (or portions thereof) being awarded to each party; and Husband paying Wife $46,000 "as additional equitable distribution," payable in monthly installments. *Id.* at 11.

The trial court determined that the master's "application of the § 3502(a) factors to the marital property in this case was appropriate, but fell short in terms of fairly compensating Wife for her contribution to the marriage." Trial Court Opinion, 11/9/2016, at 14. The trial court thus ordered equitable reimbursement.

> The courts of this Commonwealth have created the doctrine of "equitable reimbursement" as a method of compensating a spouse for his or her contribution to the marriage where the marital assets are insufficient to do so. … [E]quitable reimbursement is nothing more than a method of compensating a spouse for that which is fairly due to him or her. Whether this compensation is achieved via equitable distribution, or via "equitable reimbursement" as it is when there is insufficient marital property available to compensate the spouse, the result is the same.

***Schenk v. Schenk***, 880 A.2d 633, 640-41 (Pa. Super. 2005) (citing ***Zullo v.***

***Zullo***, 613 A.2d 544 (Pa. 1992), and ***Bold v. Bold***, 574 A.2d 552 (Pa. 1990)).

The trial court offered the following explanation for the propriety of

equitable reimbursement in the instant case.

> First, Wife contributed funds to the marriage that far exceeded Husband's contributions. Specifically, Wife contributed funds to help get Husband out from debt. Husband was "upside down" on his premarital Virginia Home because the Virginia Home only sold for $520,000.00, which was less than what Husband owed on the mortgage. Accordingly, Husband needed $95,560.27 to complete the sale. These funds were supplied by Wife. Wife refinanced and increased the mortgage on her premarital Dunn Valley Road Home by more than $75,000.00 and provided $20,000.00 of her cash to Husband so Husband could sell his Virginia Home. After a marriage of less than four years, the parties separated. At the time of separation, Husband was free and clear of his Virginia Home because of Wife's assistance. However, Wife is compelled to continue paying the mortgage she had refinanced for Husband's benefit. As a result, it is Wife [who] is now *de facto* paying for Husband's devalued Virginia Home. Husband received this benefit, but Wife not only did not receive a benefit, she incurred more debt for Husband's benefit. Out of fairness to Wife, Wife must be compensated for her contribution that enabled Husband to eliminate a premarital debt.

> Second, marital assets are insufficient to compensate Wife for her contribution. As indicated by the Master in her Supplemental Report, the marital estate only totaled $75,319.00. The marital estate was therefore smaller than the $96,000.00 that Wife had contributed to Husband to sell his Virginia Home. Where marital assets are insufficient to compensate a spouse, equitable reimbursement is appropriate. Actually, although the marital estate was valued at $75,319.00, it was [] smaller than that because Husband cashed two marital assets [valued at $22,400.00 total] post separation and Wife received none of these assets. … Clearly, the parties' marital estate was insufficient to compensate Wife for her $96,000.00 contribution.

Since Wife contributed funds to Husband and the marital assets were insufficient to compensate Wife for her contribution, equitable reimbursement [of $96,000 to Wife] is appropriate in this case. …

Trial Court Opinion, 11/9/2016, at 19-20 (citations and footnote omitted).

In seeking to have this Court award him relief, Husband complains that the master did not designate the $96,000 award to Wife as equitable reimbursement rather than equitable distribution, and that it "is clear that the [trial] court suggested to the [m]aster that her distribution scheme regarding the $96,000[] was equitable reimbursement to compensate Wife for the contribution of the funds from Wife to Husband regarding the sale of his pre-marital home." Husband's Brief at 44.

Husband cites no authority to suggest that the above constitutes reversible error. As discussed above, our role is to determine whether the trial court erred or abused its discretion in adopting the equitable distribution that was ultimately ordered. *Reber*, 42 A.3d at 1134. Husband has failed to persuade us that the trial court's proper classification of the $96,000 as equitable reimbursement after the master did not so designate it warrants any relief from this Court.

Husband also maintains that the master failed to consider that Wife was the one who insisted that Husband sell his Virginia home, and that Husband had made contributions to Wife's pre-marital property during the marriage. *Id.* at 44-45. Husband points out that he was the one making all of the

payments and financial contributions to the family for the majority of the marriage, because he "was the sole bread-winner from the date of the marriage until August of 2011, when Wife secured employment." *Id.* at 50-51.

Husband filed an exception concerning the master's failure consider his payments on Wife's Pennsylvania home. As Husband and the parties' children resided in that home during the marriage, the trial court rejected his argument, finding "Husband is not entitled to any form of credit for paying the mortgage on a house in which he and his family lived and derived benefit." Trial Court Opinion, 11/9/2016, at 23. Husband offers no authority to convince us that the trial court's ruling was improper.

Husband's argument on this point also utterly devalues Wife's contribution to the family during that time of raising the parties' two children. The trial court acted within its discretion in weighing the different contributions of Husband and Wife to the marriage. *See*, *e.g.*, *Fonzi v. Fonzi*, 633 A.2d 634, 638 (Pa. Super. 1993) (rejecting the husband's argument that he should have received "a greater share of the marital estate because of his employment efforts" where the trial court had "recognized the substantial contribution of wife as homemaker" in bearing "the entire burden" of rearing the parties' children).

In essence, Husband's argument mainly consists of his offering his own analysis of the statutory factors as the proper one, asking this Court to

reweigh the evidence to reach his desired result. That we will not do. **Busse v. Busse**, 921 A.2d 1248, 1260 (Pa. Super. 2007) ("The weight to be given to the[] statutory factors depends on the facts of each case and is within the court's discretion. We will not reweigh them.") (internal citations and quotation marks omitted)).

The record shows that the trial court considered the relevant information, and determined that the equitable result of this short marriage was to split the marital property nearly in half, and to have Husband pay Wife back the $96,000 she contributed to paying off his pre-marital mortgage. Because Husband has failed to establish that the trial court's order is the result of any error of law or evidence of partiality, prejudice, bias, or ill-will on the part of the trial court contained in the record, we will not disturb the equitable distribution order. **Accord Twilla v. Twilla**, 664 A.2d 1020 (Pa. Super. 1995) (holding monthly equitable reimbursement payments were appropriate to compensate wife for husband's dissipation of equity in the home).

With his last issue, Husband claims that the trial court erred in requiring Husband to continue paying APL throughout the appeal process. Husband's Brief at 52.

> We review APL awards under an abuse of discretion standard. APL is an order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding. APL is designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse. Also, and perhaps more importantly, APL is based on the need of one party to have equal financial resources

- 11 -

to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare.

*Carney v. Carney*, 167 A.3d 127, 134 (2017) (internal citations and quotation marks omitted).

The award of APL is not dependent upon the status of the parties but on the state of the litigation. This means, in theory, that the APL terminates at the time of divorce which usually concludes the litigation. However, a divorce is not final for purposes of APL until appeals have been exhausted and a final decree has been entered. Thus, while APL typically ends at the award of the divorce decree, which also should be the point at which equitable distribution has been determined, if an appeal is pending on matters of equitable distribution, despite the entry of the decree, APL will continue throughout the appeal process and any remand until a final [o]rder has been entered.

*DeMasi v. DeMasi*, 597 A.2d 101, 104 (Pa. Super. 1991) (emphasis omitted).

Here, Husband dos not challenge the amount of APL awarded by the trial court. Rather, Husband argues that, with child support, past alimony payments, individual assets, and an award of $10,000 in counsel fees, the financial resources of the parties have already been "sufficiently equalize[d]." Husband's Brief at 53.

The trial court disagreed, observing that, while Wife has received substantial APL payments over the years that this case has been litigated, she nonetheless still has a lower earning capacity than Husband, and this divorce litigation has been long and complex. Trial Court Opinion, 7/3/2017, at 6. Further, Husband's litigation choices have dragged this case out, with the proliferation of issues litigated. *See*, *e.g.*, Trial Court Opinion, 11/9/2016, at

21-31 (addressing Husband's twenty exceptions and six additional exceptions to the master's report). It appears that Husband is making good on his statement, made when Wife filed for APL, that "he would make sure that he cost [Wife] every penny that he paid [her]…." N.T. Master's Hearing, 8/3/2015, at 95. Under these circumstances, we discern no abuse of the trial court's discretion in holding that Husband has failed to show that early termination of APL was warranted. **Carney**, 167 A.3d at 135 ("It is the burden of the party seeking to modify an order of support to show by competent evidence that a change of circumstances justifies a modification.").

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 4/13/2018