636 A.2d 1190

### In re TRUST ESTATE OF Ethel JAMISON, Settlor.

Superior Court of Pennsylvania.

Argued Oct. 27, 1993.

Filed Feb. 7, 1994.

Arthur L. Jenkins, Jr., Norristown, for appellant.

Bernice J. Koplin, Philadelphia, for appellee.

Before ROWLEY, President Judge, and McEWEN and KELLY, JJ.

McEWEN, Judge.

This appeal has been taken from a final decree which dismissed the exceptions and objections to a ruling that the "Slayer's Act"[1] effected the forfeiture of the share of appellant to the trust of Ethel Jamison, settlor of the *inter vivos* trust which is the focus of the appeal. While the trial court undertook a perceptive expression of the basis for its decree of forfeiture, and while we affirm that final decree and conclude that appellant is not entitled to any share of the trust res, we rely upon a rationale which differs somewhat from that employed by the trial court.

The brief of appellant recounts in succinct and able fashion the factual and procedural history underlying this appeal:

1. Act of June 30, 1972, P.L. 508, No. 164, §§ 2 *et seq.*, effective July 1, 1972, 20 Pa.C.S. §§ 8801 *et seq.*

On August 10, 1988, Bernice's mother, Ethel Jamison (Ethel), created an irrevocable inter vivos trust (trust) and transferred all her property to her trustees named therein. Appellant is one of the trustees named and appellees are the two surviving co-trustees, William Jamison having died January 2, 1990. Under the terms of the trust, trustees were given discretion to use income and principal for the benefit of Ethel and Bernice's sister, Leslie Jamison (Leslie), during their lifetimes, and upon the last to die of Ethel and Leslie, the trust terminated and the trustees were directed to pay the remaining trust principal in shares, Bernice's share set forth as one-half. On July 30, 1991, Ethel died and thereafter, on the same day, Leslie committed suicide. Bernice pleaded guilty to third degree murder in the death of her mother.

The first and final account of trustees was filed by Floyd and Florence, and Bernice filed objections to the proposed distribution since Floyd and Florence did not propose that one-half of the remaining trust principal be distributed to her. Thereafter, the lower court filed its adjudication and memorandum opinion determining that in accordance with Sections 8802 and 8804 of the Probate, Estate & Fiduciaries Code ("Slayer's Act"), the share for Bernice passed to her surviving issue because she was sentenced for the third degree murder of Ethel. Bernice filed exceptions to the adjudication and, after oral argument, the lower court en banc issued a final decree dismissing her exceptions, from which Bernice has filed this appeal.

Appellant urges this Court to vacate the decree, contending that the Chancellor committed an error of law in concluding that appellant's share of the trust res passed to her issue since:

Ethel transferred her property to the trustees under the inter vivos trust dated August 10, 1988. She did not retain any interest in the trust property. When Ethel died, the trust did not terminate but continued for the life of Leslie. It was Leslie's suicide which caused the trust to terminate and required the trustees to distribute the remaining princi-

pal. Thus, the Slayer's Act does not apply to require a forfeiture of Bernice's share of trust principal since she has not acquired property or received any benefit as a result of her mother's death.

The statutory proscription of the Slayer's Act is not a subject of dispute:

No slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent, but such property shall pass as provided in the sections following.

20 Pa.C.S. § 8802.

However, both of the parties, as well as the trial court, focused for disposition of the property upon Section 8804 of the Slayer's Act:

Property which would have passed to or for the benefit of the slayer by devise or legacy from the decedent shall be distributed as if he had predeceased the decedent.

20 Pa.C.S. § 8804. We find this provision to be inapplicable to disposition of the property in the present case—an irrevocable *inter vivos* trust—since the provision *exclusively* addresses the disposition of property by devise or legacy.

Our analysis must, of course, pursue the course which the Supreme Court has defined:

Where a party seeks to invoke the protections available under the Slayer's Act, a court must determine whether the slayer acquired any property or benefit by slaying the decedent, keeping in mind that the sections of the statute are to be construed broadly to effect the policies of the State.

*Drumheller v. Marcello*, 516 Pa. 428, 433, 532 A.2d 807, 809 (1987). The primary policy that the Pennsylvania Slayer Act seeks to enforce is found in the maxim "Nullus commodum capere potest de injuria sua propia—No man can take advantage of his own wrong." *Restatement of Restitution*, § 187, comment a (1937). The legislature clearly so declared in Section 8815: "This chapter shall not be considered penal in nature, but shall be construed broadly in order to effect the

policy of this State that no person shall be allowed to profit by his own wrong, wherever committed." 20 Pa.C.S. § 8815.

When any person participates in the "willful and unlawful killing of any other person",[2] and when property, if events had taken their natural course, would have been distributed from the decedent's estate to the slayer, the Slayer's Act focuses on *the manner in which the transfer of property was disrupted* in order to identify which types of property interests the law should deny to the slayer.

[A] felonious and intentional killing potentially disrupts property transfers in three ways: (1) the victim loses personal enjoyment of property; (2) the victim loses the opportunity to make an alternative estate plan; and (3) survivorship becomes unascertainable because the order of deaths was determined by the survivor's heinous act. The victim's lost personal enjoyment of the property cannot be retrieved, and therefore, the law need not address this disruption. The property transfer law ... should determine whether the two potential disruptions to property transfers are ameliorated if the slayer, or the slayer's estate, is denied the right to succeed to a property interest. If the slayer's forfeiture of the property interest does not ameliorate either of those two potential disruptions to a property transfer, the analysis concludes that forfeiture is not essential to regulate property transfers.

Fellows, *The Slayer Rule: Not Solely a Matter of Equity*, 71 Iowa L.R. 489, 504 (January 1986) (footnote omitted).

The initial inquiry then is whether the decedent retained any right to alter disposition of the relevant property during his/her lifetime. The Slayer's Act will always apply to any types of transfer where the decedent retained the ability to alter the disposition of property because the killing deprived the victim of the opportunity to change that disposition. Consequently, the Slayer's Act will always deprive a slayer of

---

**2.** The Slayer's Act defines the term "slayer" as "any person who participates, either as a principal or as an accessory before the fact, in the willful and unlawful killing of any other person." 20 Pa.C.S. § 8801.

the right to acquire property under a will, a revocable *inter vivos* trust, or an insurance policy where the insured retained the right to change beneficiaries. *See:* 20 Pa.C.S. § 8804 (slayer denied property which would have passed to the slayer by devise or legacy from decedent); 20 Pa.C.S. § 8811 (slayer denied insurance proceeds payable to the slayer as the beneficiary or assignee of insurance policy on the life of decedent). *Cf. Restatement of Restitution,* § 189, comment c (1937) (rule denying slayer rights to insurance proceeds as a result of death of decedent/insured applies regardless of whether or not insured retained right to change beneficiary).

■ However, the Slayer's Act restricts application of the Act to those instances where the slayer acquires any property or benefit *"as the result of the death of the decedent"*. 20 Pa.C.S. § 8802. Thus, a slayer will not be deprived of property to which he/she is otherwise entitled. *See: Restatement of Restitution,* § 188, comment a (1937). Our Supreme Court recognizes such a notion and has stated:

> By its express terms, the [Slayer's] Act attempts to insure that a person will not benefit from his misdeed, but there is no indication, express or implied, that the Act is meant to extinguish any property right enjoyed by the slayer at the time of his misdeed nor should it be construed to have that effect unless necessary. The balance struck by the legislature is that between the prevention of the slayer's self-enrichment by his crimes on the one hand, and the right to retain that property which he possessed immediately before the slaying, on the other hand.

*In re Estate of Larendon,* 439 Pa. 535, 538–539, 266 A.2d 763, 765 (1970).[3]

■ Accordingly, the Slayer's Act should not deprive a slayer of property over which the felonious killing had no effect. For example, a slayer who owns property as a joint tenant with the decedent may retain his/her property interest

---

**3.** *In re Estate of Larendon, supra,* applied sections of the predecessor of the current Slayer's Act, Act of August 5, 1941, P.L. 816, § 1, 20 P.S. §§ 3441 *et seq.,* repealed by the Act of June 30, 1972, P.L. 508, No. 164, §§ 2 *et seq.,* effective July 1, 1972, 20 Pa.C.S. §§ 8801 *et seq.*

where the slayer obtains severance or a partition of the property. 20 Pa.C.S. § 8806(a), (b). *See also: In re Estate of Larendon, supra* at 540, 266 A.2d at 766–67. Based on this same principle, the Slayer's Act will not deprive a slayer, who feloniously kills his/her spouse, of the slayer's one-half interest for life in property owned by the entireties. 20 Pa.C.S. § 8805.

■ The second inquiry is whether the property is conditioned on survivorship. If an interest in property is conditioned on survivorship and survivorship becomes unascertainable because the order of deaths was determined by the survivor's heinous act, it is doubtful whether or not a slayer would have had any interest in the property. The premise of the Slayer's Act thus requires that the probability that the slayer would acquire an interest in the property should be resolved against the slayer. *Restatement of Restitution,* § 188, comment a (1937). The chances that the slayer would have outlived the decedent, given their respective ages or states of health, is immaterial in resolving the uncertainty. *Id.*

■ We turn now to the facts of the present case and first look to see whether the decedent retained any right to alter disposition of the relevant property during her lifetime. The trust designated Bernice J. Cotlar, William Jamison, Floyd Jamison, and Florence Jamison as trustees. The trustees were empowered to:

> use so much of the income and principal for the benefit of either of them [the trust beneficiaries, Ethel Jamison and Leslie Jamison] as they, *in their sole and absolute discretion,* after considering other available resources, deem appropriate to supplement, but not supplant, any governmental assistance or benefit available to either of them.

Ethel Jamison retained no power in which she could alter the disposition of either the principal of the trust or the income derived therefrom.[4] Furthermore, the trust did not

4. The benefits and powers enumerated in the trust on behalf of Ethel Jamison were identical to those enumerated for Leslie Jamison. Like-

afford Ethel Jamison the right to invade either the principal or the income generated by it. By its very terms, only the designated trustees, "in their sole and absolute discretion", could invade the principal or income of the trust. Finally, section six of the trust designated the trust as "irrevocable" and not "subject to further alteration or amendment." Based upon the clear and unambiguous language of the trust, it is evident that Ethel Jamison did not retain any right to alter disposition of the trust property during her lifetime.

We turn now to the second inquiry: whether the property is conditioned on the survivorship of the victim. Section I(D) of the trust provided as follows:

> Upon the last to die of ETHEL JAMISON and LESLIE JAMISON, the trust shall terminate and the Trustees shall pay over all remaining principal in the following shares:
>
> 1. One-half thereof to BERNICE J. COTLAR, *if then living*, and if not then living, to her then living issue, per stirpes.

Thus, appellant's entitlement to her share of the remaining trust was clearly conditioned upon her surviving both Ethel Jamison and Leslie Jamison. Sections 8808 and 8809 of the Pennsylvania Slayer's Act provide:

> **§ 8808. Interests dependent on survivorship or continuance of life**
>
> Any interest in property, whether vested or not, held by the slayer, *subject to be divested, diminished in any way or extinguished, if the decedent survives him* or lives to a certain age, shall be held by the slayer during his lifetime or until the decedent would have reached such age, but shall then pass as if the decedent had died immediately thereafter.

20 Pa.C.S. § 8808 (emphasis supplied).

> **§ 8809. Contingent remainders and executory or other future interests**

wise, the trust did not terminate until the deaths of both Ethel Jamison and Leslie Jamison.

As to any contingent remainder or executory or other future interest held by the slayer, subject to become vested in him or increased in any way for him upon the condition of the death of the decedent:

(1) *If the interest would not have become vested or increased if he had predeceased the decedent, he shall be deemed to have so predeceased the decedent.*

20 Pa.C.S. § 8809 (emphasis supplied).

It is clear that the effect of application of the Slayer's Act is to deny appellant her share of the trust. The share to which appellant now claims she is entitled is a direct result of appellant's felonious and intentional, and thereby heinous, act of the murder of her mother. The Slayer's Act functions to deny a slayer any property which she acquires any interest in as a result of her atrocious act. 20 Pa.C.S. § 8802. Appellant's interest in the transfer of the trust property was specifically conditioned upon her surviving the decedent. By altering the natural course of events upon which this condition rested, the Slayer's Act operates to deprive appellant of her interest in the trust. *See:* 20 Pa.C.S. § 8808. This goal is accomplished through Section 8809, which presumes, for purposes of the disposition of the relevant property, that the slayer predeceased the decedent. 20 Pa.C.S. § 8809(1). Accordingly, since appellant is deemed to have predeceased the decedent, the trust provides that her share is to be distributed to her then living children, per stirpes. Thus, the trial court properly proceeded to distribute the appellant's share of the trust to appellant's then living children, Floyd Cotlar and Bree Cotlar.[5]

Order affirmed.

**5.** Appellant argues that she is entitled to her share of the trust because it was the death of Leslie Jamison, not Ethel Jamison, that terminated the trust. Appellant contends that Leslie Jamison's suicide occurred after the death of Ethel Jamison and, consequently, appellant's conviction of third degree murder for the death of Ethel Jamison should have no effect on appellant's property rights. We cannot agree. It is conceivable that Ethel Jamison, had she not been murdered, may have outlived appellant. Had this course of events occurred, appellant would have had no interest whatsoever in the trust property. It is

therefore irrelevant upon whose death the trust terminated since the order of deaths was rendered unnatural by appellant's own hand. As we previously noted, the policy underlying the Slayer's Act requires that we resolve the question of who may have outlived whom against appellant.