## ESTATE OF Phyllis Ann VERNUM by Brian J. PRATT, Executor, Appellees

### v.

## ESTATE OF Richard E. VERNUM by Heidi J. WENMOTH, Formerly Heidi J. Hulsizer and Heather Schrug, Co–Executrices, Appellants.

Superior Court of Pennsylvania.

Submitted Aug. 11, 2008.

Filed Nov. 6, 2008.

---

**182**

Joseph H. Keebler, Jr., Franklin, for appellants.

1. 20 Pa.C.S.A. §§ 8801–8815.

Tamera M. Ochs Rothschild, Titusville, for appellees.

BEFORE: ORIE MELVIN, J., McEWEN, P.J.E. and HUDOCK, J.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellants, Heidi J. Wenmoth, formerly Heidi J. Hulsizer, and Heather Schrug, Co–Executrices of the Estate of Richard E. Vernum, appeal from the September 21, 2007 order finding that the Slayer's Act[1] controls the disposition of property held by Phyllis Ann Vernum and Richard E. Vernum, as tenants by the entireties, and any and all property which could have passed to Richard E. Vernum as a result of the death of Phyllis Ann Vernum. After careful review, we affirm.

¶ 2 The parties stipulated to the following facts:

1. Richard E. Vernum died on September 5, 2004. At the time of his death, Richard Vernum was married to Phyllis Ann Vernum.

2. Mr. and Mrs. Vernum were separated in 2004, and a divorce proceeding had been filed by Phyllis Ann Vernum against Richard E. Vernum.

3. On September 5, 2004, Richard E. Vernum went to a trailer where he believed his wife was meeting with her paramour. He entered the residence and shot Phyllis Ann Vernum and her paramour, killing both.

4. Subsequently, on September 5, 2004, Mr. Vernum left the trailer and committed suicide by gunshot.

5. Richard E. Vernum was survived by two daughters by a prior mar-

riage: Heidi Hulsizer and Heather Shrug.

6. Mr. Vernum died testate and a copy of his will was admitted into probate in Venango County at R.W. No. 61–04–00411.

7. Phyllis Ann Vernum ("Decedent") died September 5, 2004, leaving a will dated May 5, 2003, which was admitted into probate in Venango County at R.W. No. 61–04–00342.

8. Phyllis Ann Vernum was survived by Michael A. Pratt and Brian J. Pratt, her two sons from a previous marriage.

9. Richard E. Vernum participated as a principal in the willful and unlawful killing of Phyllis Ann Vernum, as admitted by the Executrix of the Estate of Richard E. Vernum at paragraph three (3) of her Petition to Remove Personal Representative and/or Compel Estate Administration.

10. Richard E. Vernum is/was a "Slayer" as defined by the Pennsylvania Slayer's Act, 20 [Pa.C.S.A.] §§ 8801 *et seq.*

11. At the time of her death, Decedent, Phyllis Ann Vernum, owned property jointly with Richard E. Vernum as tenants by the entireties and as a cotenant.

12. Known assets held as tenants by the entireties by the Decedent, Phyllis Ann Vernum and Richard E. Vernum are:

a. Galaxy Federal Credit Union Savings Account # 202232 $50.00

b. National City Bank, Checking Account # 16191 $6.02

c. Oil Region Federal Credit Union Savings Account # 1095 $6.35

d. Real Estate located at RD # 2, East State Road, Seneca, Venan-go County, Pennsylvania 16346 (value per appraisal by Dale H. Wilson 2/28/05) $98,500.00

e. Household Goods and Furnishings (value per appraisal by Dale H. Wilson 2/28/05) $11,390.00

f. 2003 Winnebago Journey Model 39QD—18,500 miles $113,000.00

g. 2002 Harley Davidson Motorcycle—20,781 miles $15,810.00

h. 1999 Chevrolet Silverado Pickup Truck—50,840 miles $11,200.00

i. 1995 Chevrolet Corvette—52,000 miles $16,725.00

13. Known assets held as co-tenants by Phyllis Ann Vernum, Richard E. Vernum and a third party are:

a. Oil Region Federal Credit Union Savings Account # 1472 $29.42

b. Oil Region Federal Credit Union Savings Account # 1688 $31.75

c. Oil Region Federal Credit Union Savings Account # 1440 $47.11

14. The Death Certificates for both Richard E. Vernum and Phyllis Ann Vernum state the time of death for both parties as 2:00 a.m., September 5, 2004.

Orphans' Court Opinion, 9/14/07, at 1–3; Certified Record (C.R.) at 9.

¶ 3 On September 25, 2006, Appellants filed a "Petition to Remove Personal Representative and/or Compel Estate Administration." In response, Appellee, Brian J. Pratt, Executor of the Estate of Phyllis Ann Vernum, filed a "Petition for the Determination of the Property of the Estate, Accounting and Turnover" on October 10, 2006. A hearing was held on this matter on December 6, 2006, and the parties filed briefs in support of their respective petitions on January 5, 2007. On September 14, 2007, the Orphans' Court authored an opinion in this matter. *Id.* Thereafter, on September 21, 2007, the Orphans' Court

issued an order finding that the Slayer's Act controls the disposition of property held by Phyllis Ann Vernum and Richard E. Vernum as tenants by the entireties, and any and all property which could have passed to Richard E. Vernum as a result of the death of Phyllis Ann Vernum. Appellants filed exceptions to said order on October 5, 2007, which were denied by the Orphans' Court on December 12, 2007. This timely appeal followed.[2]

¶ 4 Appellants raise the following issues for our review:

1. Whether the Slayer's Act directs that all entireties property owned by Richard E. Vernum and Phyllis A. Vernum at the time of their deaths be distributed to the [E]state of Phyllis A. Vernum?

2. Whether [the Simultaneous Death Act] applies to the case at hand and directs how the entireties property owned by Phyllis A. Vernum and Richard E. Vernum at the time of their deaths be distributed?

Appellants' brief at 4. For the purposes of our review, we have chosen to address Appellants' claims simultaneously.

¶ 5 "Our standard of review of the findings of an orphans' court is deferential." *In re Ware*, 814 A.2d 725, 731 (Pa.Super.2002) (citation omitted). "When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." *In re Estate of Rosser*, 821 A.2d 615, 618 (Pa.Super.2003) (citation omitted), *appeal denied*, 574 Pa. 761, 831 A.2d 600 (2003). "Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility

determinations absent an abuse of that discretion." *Ware, supra.*

As an appellate court we can modify an Orphans' Court decree only if the findings upon which the decree rests are unsupported by competent or adequate evidence or if there has been an error of law, an abuse of discretion or a capricious disbelief of competent evidence. The test to be applied is not whether we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion.

*In re Gumpher,* 840 A.2d 318, 321 (Pa.Super.2003) (citations omitted).

¶ 6 In the case *sub judice,* the crux of Appellants' claims hinge on whether the Slayer's Act or the Simultaneous Death Act [3] controls the disposition of the property held by Richard E. Vernum and Phyllis Ann Vernum as tenants by the entireties. The Slayer's Act provides that "no slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent, but such property shall pass as provided in the sections following." 20 Pa.C.S.A. § 8802, **Slayer not to acquire property as result of slaying.** A slayer is defined as "any person who participates, either as a principal or as an accessory before the fact, in the willful and unlawful killing of any other person." 20 Pa.C.S.A. § 8801, **Definition of terms.**

¶ 7 Section 8805 of the Slayer's Act governs property held as tenancies by the entireties and provides:

One-half of any property held by the slayer and the decedent as tenants by the entirety shall pass upon the death of the decedent to his estate, and the other

---

**2.** Appellants and the Orphans' Court have complied with Pa.R.A.P.1925.

**3.** 20 Pa.C.S.A. §§ 8501–8505.

half shall be held by the slayer during his life, subject to pass upon his death to the estate of the decedent.

20 Pa.C.S.A. § 8805, **Tenancies by the entirety.**

¶ 8 Likewise, the Simultaneous Death Act also contains a section pertaining to the disposition of entireties property, which provides:

Where there is no sufficient evidence that two joint tenants or tenants by the entirety have died otherwise than simultaneously, the property so held shall be distributed, one-half as if one had survived, and one-half as if the other had survived. If there are more than two joint tenants, and all of them have so died, the property thus distributed shall be in the proportion that one bears to the whole number of joint tenants.

20 Pa.C.S.A. § 8503, **Joint tenants or tenants by the entirety.**

¶ 9 Appellants contend that "[Section 8503 of the Simultaneous Death Act] must be read *in pari materia* with the provisions of the Slayer's Act" and should ultimately control the disposition of the property at issue. Appellants' brief at 10–12. In reaching this conclusion, Appellants rely on the reasoning set forth in *In re Gatto's Estate*, 74 Pa. D. & C. 529, 537 (1951), and request we adopt the proposition that the Slayer's Act is only applicable if the slayer survives the victim. *Id.* Appellants argue that in light of the indistinguishable times of death on the parties' death certificates and the fact "that there was no evidence . . . in the record to establish whether Richard [E.] Vernum survived Phyllis [Ann] Vernum," one-half of the property held by the decedents as tenants by the entireties should be distributed to the Estate of Phyllis Ann Vernum and one-half should be distributed to the Estate of Richard E. Vernum. *Id.* at 8–10, 13–14. We disagree.

▮ ¶ 10 Contrary to Appellants' contentions, we find no error on the part of the Orphans' Court in determining that Section 8805 of the Slayer's Act alone controls the disposition of the property in this matter. As discussed, the Slayer's Act precludes the slayer of a victim from acquiring, *in any way*, any property or receiving any benefit as a result of the death of said victim. *See* 20 Pa.C.S.A. § 8802 (emphasis added). Indeed, "the premise of the Slayer's Act . . . requires that the probability that the slayer would acquire an interest in the property should be resolved against the slayer." *In re Trust Estate of Jamison*, 431 Pa.Super. 486, 636 A.2d 1190, 1193 (1994) (citation omitted). The fact that the slayer ended his own life by suicide following the slaying of the victim, as is the case here, is immaterial to the application of the Slayer's Act. As the Orphans' Court noted in its opinion,

[i]t would indeed be absurd and unreasonable to allow a Slayer to avoid the consequences of the Slayer's Act by his own independent act. If Mr. Vernum had not taken his own life after killing Mrs. Vernum, all of the property held by Mr. and Mrs. Vernum would have eventually, passed through Mrs. Vernum's Estate . . . the specific policy sought to be affected [sic] by the Legislature through the Slayer's Act cannot be achieved if the Simultaneous Death Act is also applied in this case.

Orphans' Court Opinion, 9/14/07, at 8; C.R. at 9.

▮ ¶ 11 "Where a party seeks to invoke the protections available under the Slayer's Act, a court must determine whether the slayer acquired any property or benefit by slaying the decedent, keeping in mind that the sections of the statute are to be construed broadly to effect the policies of the State." *Jamison, supra* at 1192 (*citing Drumheller v. Marcello*, 516 Pa. 428, 433, 532 A.2d 807, 809 (1987)); *see*

*also* 20 Pa.C.S.A. § 8815, **Broad construction; policy of State.**

¶ 12 Moreover, there is no requirement in the Slayer's Act that the victim die first or that there be any consideration of the order of death of the slayer and the victim. Equally unfounded is Appellant's notion that the indistinguishable times of death on the parties' death certificates somehow precluded application of the Slayer's Act, based in part on the reasoning set forth in *In re Gatto's Estate, supra.* In addition to the fact that *In re Gatto's Estate* predates the current version of the Slayer's Act, this case is not binding on this Court and, like the Orphans' Court, we decline to adopt its reasoning. *See Makozy v. Makozy,* 874 A.2d 1160, 1173 n. 7 (Pa.Super.2005), *appeal denied,* 586 Pa. 740, 891 A.2d 733 (2005) (citation omitted) (stating, "common pleas court decisions are not binding on appellate courts."). Furthermore, Appellants' contention that the parties' death certificates evidences the indistinguishable times of death is belied by the stipulated facts that establish the order of death. *See* Stipulations Nos. 3–4. Thus, *In re Gatto's Estate* is further distinguishable in that the instant victim did not survive the slayer.

¶ 13 Lastly, we note that Appellants' claim that the Simultaneous Death Act and the Slayer's Act must be construed together clearly disregards Section 1933 of the Rules of Statutory Construction. Section 1933 provides:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest

intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S.A. § 1933, **Particular controls general.**

¶ 14 Based on the foregoing reasons, we decline to apply the Simultaneous Death Act to achieve a result contrary to the intent and purpose of the Slayer's Act. Under Section 8805 of the Slayer's Act, a slayer who feloniously kills his spouse will not be deprived of the one-half interest for life in property owned by the entireties. *See* 20 Pa.C.S.A. § 8805. Upon the death of the slayer, however, the whole of the tenancy passes to the Estate of the decedent. *Id.* In the instant matter, it is undisputed that Richard E. Vernum went to the trailer where his estranged wife, Phyllis Ann Vernum, and her paramour were meeting, murdered Phyllis Ann Vernum and her paramour, and then left the trailer and committed suicide by gunshot. The parties stipulated that Richard E. Vernum was a "slayer" as defined by Section 8801. The parties further stipulated that at the time of their death, Richard E. Vernum and Phyllis Ann Vernum held assets valued at approximately $266,687.37 as tenants by the entireties. Pursuant to Section 8802 of the Slayer's Act, Richard E. Vernum cannot acquire any property or benefit from Phyllis Ann Vernum's death in any way. Rather, under Section 8805, one-half of the property held by Phyllis Ann Vernum as a tenant by the entireties passed upon her death to her estate, and the other one-half was held by Richard E. Vernum for his life. Upon his own subsequent death by suicide moments later, his one-half passed to the Estate of Phyllis Ann Vernum. Accordingly, Appellants' claims must fail.

¶ 15 Order affirmed.